**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

GLENDA GAIL MCCART,

           Plaintiff,

                                   Case No. 3:13-cv-735-J-JRK

vs.

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

           Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I. Status**

Glenda Gail McCart ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is due to "myasthenia gravis." Transcripts of Administrative Proceedings (Doc. Nos. 10-11; collectively, "Tr." or "administrative transcript"),[2] filed August 30, 2013, at 95, 96, 101, 104; see Tr. at 74-75. On May 24, 2010, Plaintiff filed an application for DIB, alleging an onset disability date of April 19, 2010. Tr. at 154-55. Plaintiff's application was denied initially, see Tr. at 97-99, and was denied upon reconsideration, see Tr. at 102-03.

---

      [1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 12), filed August 30, 2013; Reference Order (Doc. No. 13), entered September 3, 2013.

      [2] The pagination is continuous between the two transcripts.

On October 3, 2011, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff, who was represented by counsel; a vocational expert ("VE"); and a medical expert testified. Tr. at 36-86. At the time of the hearing, Plaintiff was fifty-six (56) years old. Tr. at 54. The ALJ issued a Decision on January 25, 2012, finding Plaintiff not disabled through the date of the Decision. Tr. at 24-31.

Plaintiff submitted a Request for Review of Hearing Decision/Order to the Appeals Council. Tr. at 20. The Appeals Council received from Plaintiff and incorporated into the administrative transcript some additional evidence in the form of a memorandum from Plaintiff's counsel with an attached fact sheet regarding myasthenia gravis published by the National Institute of Neurological Disorders and Stroke, Tr. at 5, 227-35; and a medical record from Mark Emas, M.D. ("Dr. Emas") dated December 8, 2011, Tr. at 5, 865-66. The Appeals Council also received a letter from Dr. Emas dated June 14, 2012, but the Appeals Council determined that the letter "pertain[ed] to a later time . . . and it d[id] not affect the decision about whether [Plaintiff was] disabled beginning on or before January 25, 2012." Tr. at 3. The Appeals Council therefore returned the June 14, 2012 letter to Plaintiff without incorporating it into the administrative transcript. On April 29, 2013, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On June 21, 2013, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff advances two arguments on appeal. See Plaintiff's Brief (Doc. No. 18; "Pl.'s Br."), filed November 4, 2013. First, Plaintiff argues that the ALJ erred by failing to articulate

good cause reasons for discrediting the medical opinions rendered by Plaintiff's "treating physician and treating neurologist" and by "crediting the opinion of a nonexamining retired neurologist . . . ." Pl.'s Br. at 1.  Second, Plaintiff contends that the ALJ "erred in failing to meaningfully address the impact of [Plaintiff's] cervical spine and thoracic spine conditions, visual impairment, and speech impairment on her ability to perform her past relevant work." Id.  On December 26, 2013, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") responding to Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned determines that the Commissioner's final decision is due to be affirmed.

## II.  The ALJ's Decision

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

Cir. 2004). The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ proceeded through step four of the five-step sequential inquiry, where his inquiry ended based on his step four finding. See Tr. at 26-31  At step one, the ALJ observed that Plaintiff "has not engaged in substantial gainful activity since March 1, 2010, the alleged onset date." Tr. at 26 (emphasis and citation omitted). At step two, the ALJ found Plaintiff "has the following severe impairments: myasthenia gravis; sleep apnea; degenerative disc disease of the lumbar spine and obesity[.]" Tr. at 26 (emphasis and citation omitted). At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 26 (emphasis and citation omitted).

The ALJ determined Plaintiff's residual functional capacity ("RFC") as follows:

> [Plaintiff can] perform light work as defined in 20 CFR [§] 404.1567(b). [Plaintiff] is able to sit, stand and walk off and on with reasonable breaks for six hours each in an eight-hour workday. [Plaintiff] is able to occasionally (up to one-third of the workday) lift and carry 20 pounds and more frequently (up to 2/3 of the workday) lift and carry 10 pounds or less. Within these weight limitations, [Plaintiff] has no limitation of function in her ability to use her arms, hands and feet for the operation of arm, hand or foot-pedal controls. [Plaintiff] is precluded from climbing ladders, ropes or scaffolding. However, [she] has no other postural limitations and can, at least occasionally, climb ramps or stairs and more frequently balance, stoop, kneel, crouch, and crawl. [Plaintiff] has no manipulative, visual or communicative limitations of functioning. However, [Plaintiff] should avoid exposure to temperature extremes and work at unprotected heights.

Tr. at 27 (emphasis omitted). At step four, the ALJ found Plaintiff "is capable of performing her past relevant work as a teacher aide II. This work does not require the performance of

work-related activities precluded by [Plaintiff's RFC.]" Tr. at 30 (emphasis and citation omitted). The ALJ, therefore, concluded that Plaintiff "has not been under a disability . . . from March 1, 2010 through the date of th[e D]ecision." Tr. at 31 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's

findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff advances two arguments on appeal. Each is addressed in turn.

### A. Medical Opinions[4]

Plaintiff argues that the ALJ erred by failing to articulate good cause reasons for discounting the medical opinions of two treating physicians: Dr. Emas, Plaintiff's neurologist, and Dennis A. Pallan, M.D. ("Dr. Pallan"), Plaintiff's primary physician. See Pl.'s Br. at 10-20. According to Plaintiff, the ALJ improperly discredited those opinions and instead relied upon the medical opinion of Hershel Goren, M.D. ("Dr. Goren"), a nonexamining, board certified neurologist, who testified as a medical expert at the hearing before the ALJ. See id.; see also Tr. at 116 (statement of Dr. Goren's professional qualifications).

1. Brief Summary of Plaintiff's Medical History / Summary of Medical Opinions

On December 8, 2010, Dr. Pallan completed a Physical RFC Questionnaire in which he noted Plaintiff had been his patient since June 14, 2005. Tr. at 358-62. He indicated that Plaintiff was diagnosed with myasthenia gravis in 2010. Tr. at 358. As for her symptoms, Dr. Pallan reported that Plaintiff had "fatigability of muscles, limb weakness, general fatigue, drooping of upper eyelid, difficulty swallowing, difficulty speaking, alteration

---

[4] "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2); see also 20 C.F.R. § 404.1513(a) (defining "[a]cceptable medical sources").

in voice, [and] stomach cramping." Tr. at 358.  He stated that Plaintiff's symptoms were "better w/ meds[.]" Tr. at 358.  Dr. Pallan indicated that Plaintiff was not a malingerer.  Tr. at 359.  He opined that Plaintiff's pain or other symptoms would occasionally interfere with her attention and concentration and that she was capable of low stress jobs.  Tr. at 359.  He also opined as to Plaintiff's physical and environmental limitations.  See Tr. at 359-61.

Dr. Emas completed a Myasthenia Gravis RFC Questionnaire about two weeks prior to Dr. Pallan completing the RFC described above.  Tr. at 349-55.  Dr. Emas noted that he had been treating Plaintiff since March 1, 2010.  Tr. at 349.  He indicated that Plaintiff's symptoms resulting from her myasthenia gravis included "fatigability of muscles following exercise"; "limb weakness"; "general fatigue"; "drooping upper eyelid"; "difficulty speaking"; "alteration in voice"; "difficulty swallowing"; and "stomach cramping."[5]  Tr. at 349.  He indicated that Plaintiff's symptoms were "better w/ meds[.]" Tr. at 349.  Dr. Emas opined that Plaintiff was not a malingerer and that her "symptoms and signs fluctuate[d] in intensity over the course of hours to days."  Tr. at 349.  He further opined that Plaintiff had "significant difficulty with speaking, swallowing or breathing while on prescribed therapy."  Tr. at 350 (emphasis omitted).  Dr. Emas stated that Plaintiff's fatigue and symptoms would seldom interfere with her attention and concentration and that she was capable of low stress jobs.  Tr. at 350-51.  He provided estimates on Plaintiff's ability to sit, stand, walk, twist, stoop, crouch, and climb, as well as her ability to lift and carry.  Tr. at 352-53.  He also provided estimates on environmental restrictions and indicated that Plaintiff's impairments were likely

---

[5]  Apparently the "stomach cramping" was a side effect of Plaintiff's medication(s).  Tr. at 349; see Tr. at 364.

-7-

to produce good and bad days. Tr. at 354. Dr. Emas opined that on average, Plaintiff would miss about four days of work per month, Tr. at 354, and that she had "increased fatigue as [the] day progresse[d]," Tr. at 355.

In about December 2010, Dr. Emas referred Plaintiff for a neuromuscular consultation, and Plaintiff was seen by Michael T. Pulley, M.D. ("Dr. Pulley"). See Tr. at 364-66. Dr. Pulley recognized that Plaintiff's "history, examination, and previous workup were all consistent with the diagnosis of myasthenia gravis." Tr. at 365. He noted that Plaintiff "seem[ed] to have definite generalized weakness." Tr. at 365. He suggested a medication regimen, noting that "[m]ore success . . . is likely to be seen" if his suggested medication changes were implemented. Tr. at 365.

Plaintiff was hospitalized from January 30, 2011 to February 24, 2011 due in large part to a myasthenia gravis crisis. See Tr. at 384-549. Plaintiff's diagnoses upon discharge from the hospital were as follows: "Myasthenia gravis status post myasthenia crisis"; "Status post respiratory failure status post tracheostomy"; "Hypertension"; and "Status post pneumonia." Tr. at 384.

Plaintiff returned to see Dr. Emas on June 7, 2011. See Tr. at 813. In a treatment note dated June 7, 2011, Dr. Emas stated that Plaintiff's "myasthenia gravis ha[d] improved with increased motor function." Tr. at 813. Plaintiff saw Dr. Emas again on June 28, 2011, and Dr. Emas indicated that Plaintiff "continue[d] to do well from a myasthenia standpoint." Tr. at 811. Plaintiff was a "no show" for her appointment with Dr. Emas on July 28, 2011. Tr. at 810. Plaintiff then saw Dr. Emas on August 4, 2011, and she reported to him that "fe[lt] good," she had "mild fatigue in pm hours," no double or blurred vision, no eyelid

drooping, and no choking.  Tr. at 808.  Dr. Emas recommended that Plaintiff follow up with him in three months.  Tr. at 808.

Dr. Goren was called as a medical expert at the hearing before the ALJ to provide testimony relating to Plaintiff's impairments and functional abilities/limitations.  See Tr. at 38-54.  Prior to the hearing, Dr. Goren reviewed the medical evidence in the administrative transcript.  Tr. at 40-41.  Dr. Goren summarized pertinent medical records and medical opinions, and he provided his opinion on those records and opinions.  See Tr. at 41-54.  Dr. Goren offered his opinion as to Plaintiff's RFC (that was eventually adopted by the ALJ).  See Tr. at 43-45.[6]

2. Legal Framework

The Regulations establish a "hierarchy" among medical opinions that provides a framework for determining the weight afforded each medical opinion: "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining

---

[6] Plaintiff intersperses throughout her argument statements regarding the Appeals Council's receipt of a letter from Dr. Emas dated June 2012 and the Appeals Council's decision not to include that letter in the administrative transcript.  See Pl.'s Br. at 15, 24;  see also Tr. at 3 (Appeals Council's decision not to include the June 2012 letter from Dr. Emas because "[t]he new information pertains to a later time . . . [and] does not affect the decision about whether [Plaintiff was] disabled beginning on or before January 25, 2012").  Additionally, while discussing the ALJ's alleged errors, Plaintiff refers to evidence submitted to the Appeals Council that was incorporated into the administrative transcript.  See Pl.'s Br. at 17 (citing Tr. at 865), 24 (citing Tr. at 865).

Plaintiff, however, does not specifically challenge the Appeals Council's decision.  See generally Pl.'s Mem.  As such, the June 2012 letter attached to Plaintiff's Memorandum, submitted to the Appeals Council but not incorporated in the administrative transcript, is not considered by the undersigned.  See Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1266 (11th Cir. 2007) (recognizing "that when a claimant challenges the [ALJ's] decision to deny benefits, but not the decision of the Appeals Council to deny review of the [ALJ], we need not consider evidence submitted to the Appeals Council") (referring to Falge v. Apfel, 150 F.3d 1320 (1998)).  Nor does the undersigned consider the evidence presented to the Appeals Council and incorporated into the record, because such evidence was not before the ALJ and cannot be used to reverse the ALJ's Decision.  Nevertheless, even if Plaintiff had specifically challenged the Appeals Council's denial of review, a review of that evidence does not make erroneous the Commissioner's final decision.  Id. at 1262.

physicians[;] treating physicians[' opinions] are given more weight than [nontreating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citing 20 C.F.R. § 404.1527(d)(1), (2), (5)).  The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization."  20 C.F.R. §§ 404.1527(d)(2)-(5), 416.927(d)(2)-(5); see also 20 C.F.R. §§ 404.1527(e), 416.927(f).

With regard to a treating physician,[7] the Regulations instruct ALJs how to properly weigh such a medical opinion.  See 20 C.F.R. § 404.1527(c).  Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  Id.  When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and

---

[7] A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition.  See 20 C.F.R. § 404.1502.

extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). Id.

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An examining physician's opinion, on the other hand, is not entitled to deference. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987) (per curiam) (citing Gibson v. Heckler, 779 F.2d 619, 623 (11th Cir. 1986)); see also Crawford, 363 F.3d at 1160 (citation omitted). Moreover, the opinions of nonexamining physicians, taken alone, do not constitute substantial evidence. Broughton v. Heckler, 776 F.2d 960, 962 (11th Cir. 1985) (citing Spencer v. Heckler, 765 F.2d 1090, 1094 (11th Cir. 1985)). However, an ALJ may rely on a nonexamining physician's opinion that is consistent with the evidence, while at the same time rejecting the opinion of a treating physician that is inconsistent with the evidence. Oldham, 660 F.2d at 1084.

An ALJ is required to consider every medical opinion. See 20 C.F.R. §§ 404.1527(d), 416.927(d) (stating that "[r]egardless of its source, we will evaluate every medical opinion

we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. Unit B 1981) (citation omitted); see also 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir.1987)); see also Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440. "'In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence.'" Winschel, 631 F.3d at 1179 (quoting Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981)). "[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,'" the decision will not be affirmed "'simply because some rationale might have supported the ALJ's conclusion.'" Id. (quoting Owens v. Heckler, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam)).

   3. Analysis

After summarizing the medical opinions at issue, the ALJ assigned "little weight" to the opinions rendered by Dr. Emas and Dr. Pallan. Tr. at 29. The ALJ reasoned that those opinions "are not supported by the[ physicians'] own office notes, such as Dr. Emas's June 7, 2011 and June 28, 2011 notes showing improvement of [Plaintiff's] myasthenia gravis with increased motor function and Dr. Pallan's treatment notes lacking any substantial physical examination findings[.]" Tr. at 29-30. The ALJ further reasoned that the notes of Dr. Emas and Dr. Pallan are not supported by "Dr. Pulley's December 9, 2010 physical

examination findings and a normal nerve repetitive stimulation study, without evidence to support a neuromuscular transmission disorder performed on March 3, 2010." Tr. at 30. The ALJ continued, "Furthermore, these opinions are not consistent with the testimony of Dr. Goren who had an opportunity to study the entire medical evidence of record and who offered a cogent medical rationale for the conclusions and functional limitations that he offered during the hearing." Tr. at 30 (references to exhibits omitted).

More specifically as to Dr. Goren, the ALJ assigned his opinion "greater weight," because "Dr. Goren's testimony was within his field of expertise of neurology"[8] and "was based on his review of the entire medical evidence and specific references to the evidence of record." Tr. at 30. The ALJ additionally reasoned that "Dr. Goren's testimony [was] consistent with the record as a whole, including normal repetitive nerve stimulation study findings and Dr. Emas's July 7, 2011 treatment notes showing improvement of [Plaintiff's] myasthenia gravis with increased motor function." Tr. at 30 (references to exhibits omitted).

Upon review, the undersigned finds that the ALJ articulated good cause reasons for discrediting the opinions of Plaintiff's treating physicians and that the ALJ properly relied on the opinion of Dr. Goren. It is not for this Court to reweigh the evidence. See Cornelius, 936 F.2d at 1145. A review of the ALJ's Decision and the administrative transcript leads the undersigned to conclude that the ALJ's Decision is supported by substantial evidence.

---

[8] Dr. Goren retired in 1996. Tr. at 40. At the time of the hearing before the ALJ, Dr. Goren was licensed to practice medicine in Ohio. Tr. at 40. Plaintiff's counsel representing her at the hearing was provided with an opportunity to question Dr. Goren on his credentials. Tr. at 40. Counsel merely clarified that Dr. Goren had been retired since 1996, but counsel asked no other questions. Tr. at 40.

### B. ALJ's Consideration of Impairments / Plaintiff's Credibility

Plaintiff next argues that the ALJ "erred in failing to meaningfully analyze [her] impairments as far as her cervical spine, thoracic spine, visual impairment, fatigue, and speech impairment and their effects on her ability to perform her past work." Pl.'s Mem. at 21. Plaintiff recognizes that "the vision, fatigue, and speech conditions are associated with the myasthenia gravis" but still argues that the ALJ "failed to credit the symptoms associated with the myasthenia gravis." Id. Plaintiff also argues that "[t]he ALJ did not even consider the cervical spine or thoracic spine[] to be minimally severe as far as limitations." Id. Without much argument or elaboration, Plaintiff also asserts that the ALJ erred in discrediting her testimony relating to these symptoms. See id. at 23-24. Plaintiff concludes, "The ALJ failed to properly analyze [Plaintiff's] impairments and credibility." Id. at 24.

Regarding Plaintiff's symptoms of myasthenia gravis (vision, fatigue, and speech conditions), as noted above, the ALJ found that Plaintiff's condition improved with treatment and medication. See Tr. at 29-30. The ALJ specifically noted improvement in Plaintiff's symptoms, citing, in part, to Dr. Emas's June 7 and 28, 2011 treatment notes. Tr. at 29. So it is clear that the ALJ properly considered these symptoms, but the ALJ reasoned that those symptoms improved with medication and treatment.

As to Plaintiff's contentions that the ALJ did not meaningfully address her cervical and thoracic spine impairments, the undersigned finds that the ALJ did properly consider Plaintiff's these impairments. In addressing the medical evidence of record, the ALJ noted that Plaintiff "has a longstanding history of obesity with various co-morbidities, such as . . . degenerative disc disease[] and low back pain." Tr. at 28 (citation omitted). The ALJ

then summarized the results of a Magnetic Resonance Imagining ("MRI") of Plaintiff's cervical spine. Tr. at 28 (referring to Tr. at 375-79).[9] The ALJ determined that the results of the MRI were "not correlated with [Plaintiff's] various physical examinations of record, which are not confirmatory of any radiculopathy. Furthermore, there appears to be little change since [Plaintiff's] earlier MRI study in 2007." Tr. at 28 (citing Tr. at 378). Moreover, Plaintiff not only failed to claim disability based on her spine impairments, but she also failed to allege what work-related functional limitations she has stemming from those impairments or point to any medical opinion confirming the existence of any work-related limitations resulting from her spine impairments. To the extent Plaintiff challenges the ALJ's RFC determination based solely on the fact that she has cervical and thoracic spine impairments, such argument is unconvincing. Merely having an impairment "does not reveal the extent to which [the impairment] limits [one's] ability to work." Moore, 405 F.3d at 1213. No error is found in this regard.[10]

While Plaintiff does not elaborate on her argument regarding credibility with specificity, the undersigned addresses it as follows. "[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying medical condition; and (2) either (a) objective

---

[9] The ALJ cited Exhibit 16F. Based on the ALJ's summary of the MRI and citation to Exhibit 16F, it is clear he was referring to Tr. at 375-79.

[10] The ALJ did not specifically cite to or discuss Plaintiff's thoracic spine impairment, although he did address Plaintiff's cervical and lumbar spine impairments. Nevertheless, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision . . . ." Dyer, 395 F.3d at 1211. The standard this Court applies is whether the ALJ's Decision on the whole is supported by substantial evidence, which the undersigned finds that it is in this case. Even if the ALJ's failure to discuss Plaintiff's thoracic spine impairment was error, the error was harmless. The medical evidence as a whole does not contradict the ALJ's findings.

medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223.

Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony, Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). "When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)).

Here, the ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." Tr. at 28.

In discussing Plaintiff's testimony, the ALJ noted that Plaintiff said "she takes her medication as prescribed and . . . it helps her." Tr. at 28. The ALJ further noted Plaintiff's testimony regarding her physical activities and capabilities, including that Plaintiff "cooks simple meals, does laundry, does dishes, is able to lift her 18-month-old grandson to her lap and rock him, mowed her lawn on a riding lawnmower for 15 minutes the week prior to her hearing and attends church with her husband." Tr. at 28. Upon review of the entire Decision and the administrative transcript, the undersigned finds that the ALJ provided "explicit and adequate reasons" for not fully crediting Plaintiff's testimony. Wilson, 284 F.3d at 1225.

## V.  Conclusion

In sum, the undersigned finds that the ALJ's Decision is supported by substantial evidence. After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on September 3, 2014.

*James R. Klindt*
JAMES R. KLINDT
United States Magistrate Judge

jlk
Copies to:
Counsel of record